IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



**HOWARD JOSEPH MIDYETT,**

       Petitioner,

v.                                       Civil Action No. **3:19CV262**

**H. CLARKE,**

       Respondent.

## MEMORANDUM OPINION

Howard Joseph Midyett, a former Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1) challenging his 2017 conviction in the Circuit Court of King William County, Virginia ("Circuit Court"). Midyett argues that he is entitled to relief on the following ground:[1]

> Claim One: "That the trial court, Virginia Court of Appeals and the Virginia Supreme Court did err[] in their decisions" because there was "insufficient evidence." (*Id.* at 5.)

Respondent moves to dismiss on the ground that Midyett's claim lacks merit. Although Respondent provided Midyett with *Roseboro* notice, and the Court granted Midyett an extension of time to file a response, he failed to file one. For the reasons set forth below, the Motion to Dismiss (ECF No. 12) will be GRANTED, the § 2254 Petition will be DENIED, and the action will be DISMISSED.

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system for citations to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization in the quotations from Midyett's submissions.

# I. PROCEDURAL HISTORY

On April 12, 2017, the Court convicted Midyett of one count of burglary. *See Commonwealth v. Midyett*, No. CR17–8(01), at 1–2 (Va. Cir. Ct. June 8, 2017). The Circuit Court sentenced Midyett to fifteen years of incarceration with twelve years and six months suspended. *See id.* at 2.

Midyett appealed. After counsel filed Midyett's Petition for Appeal, the parties filed a Joint Motion to Suspend Briefing Schedule and Remand Case to Amend Conviction Order and Conduct New Sentencing Hearing. *See Midyett v. Commonwealth*, No. 1142–17–2, at 1 (Va. Ct. App. filed Aug. 11, 2017). According to the parties:

> 1.    On February 6, 2017, the Petitioner was indicted by a grand jury sitting for King William County, charging that on or about October 10, 2016, he did commit a burglary with the intent to commit larceny, in violation of Va. Code § 18.2–91.
> 2.    On April 12, 2017, the day of Petitioner's bench trial, the indictment was amended to reflect that he was charged with committing a burglary with the intent to destroy property, thereby violatingVa. Code § 18.2–92.[2]
> 3.    However, despite the trial court's intention to convict the Petitioner under Va. Code § 18.2–92, the conviction order reflects a conviction under Va. Code § 18.2–91, despite the amendment. The . . . Petitioner was likewise sentenced under Va. Code § 18.2–91 rather than under Va. Code § 18.2–92, and the final sentencing order also reflected a conviction under Va. Code § 18.2–91 rather than under § 18.2–92.
> 4.    The Petitioner was sentenced to fifteen years of incarceration with twelve years and six months of that period suspended—a sentence that was clearly in excess of the five-year sentence permitted under Va. Code § 18.2–92.

*See id* at 1–2. On October 5, 2017, the Court of Appeals of Virginia granted the motion and remanded the case to "the trial court to determine whether a new sentencing hearing and an

---

[2] Virginia Code section 18.2–92 provides: "If any person break and enter a dwelling house while said dwelling is occupied, either in the day or nighttime, with the intent to commit any misdemeanor except assault and battery or trespass, he shall be guilty of a Class 6 felony." Va. Code Ann. § 18.2–92 (West 2020).

amended conviction order are appropriate, and if they are appropriate, to act accordingly." *Midyett v. Commonwealth*, No. 1142–17–2, at 1 (Va. Ct. App. Oct. 5, 2017).

On November 9, 2017, the Circuit Court entered an Amended Sentencing Order that reflected a corrected sentence of five years of incarceration with two years and six months suspended. *Commonwealth v. Midyett*, No. CR17–8(01), at 1–2 (Va. Cir. Ct. Nov. 9, 2017). On November 22, 2017, the Circuit Court entered a Correction Order changing the original Sentencing Order to reflect that Midyett was found guilty of "code section 18.2–92." *Commonwealth v. Midyett*, No. CR17–8(01), at 1 (Va. Cir. Ct. Nov. 22, 2017).

On November 27, 2017, counsel for Midyett notified the Court of Appeals of Virginia that the action should proceed on the Petition for Appeal. Letter 1, *Midyett v. Commonwealth*, No. 1142–17–2 (Va. Ct. App. filed Nov. 30, 2017). In his Petition for Appeal, Midyett argued that the evidence was insufficient to prove he committed burglary because the evidence did not establish the elements required to convict him of burglary. *See Midyett v. Commonwealth*, No. 1142–17–2, at 1 (Va. Ct. App. Feb. 26, 2018). The Court of Appeals denied the petition for appeal. *Id.* A three-judge panel also denied the petition for appeal. *Midyett v. Commonwealth*, No. 1142–17–2, at 1 (Va. Ct. App. May 17, 2018). On November 16, 2018, the Supreme Court of Virginia refused the petition for appeal. *Midyett v. Commonwealth*, No. 180767, at 1 (Va. Nov. 16, 2018).

## II. APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty of 1996 ("AEDPA") further circumscribes this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear

and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C.

§ 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of

habeas corpus based on any claim that was adjudicated on the merits in state court unless the

adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a

federal court believes the state court's determination was incorrect but whether that determination

was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473

(2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

### III. SUFFICIENCY OF THE EVIDENCE

In Claim One, Midyett argues "[t]hat the trial court, Virginia Court of Appeals and the

Virginia Supreme Court did err[] in their decisions" because there was "insufficient evidence."

(§ 2254 Pet. 5.) A federal habeas petition warrants relief on a challenge to the sufficiency of the

evidence only if "no rational trier of fact could find [proof of] guilt beyond a reasonable doubt."

*Jackson v. Virginia*, 443 U.S. 307, 317 (1979). The relevant question in conducting such a review

is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). The critical inquiry on review of

the sufficiency of the evidence to support a criminal conviction is "whether the record evidence

could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.

On appeal, Midyett challenged the sufficiency of the evidence, arguing that the trial court

erred "in denying Midyett's Motions to Strike and in convicting him of burglary because there was

4

not sufficient evidence to establish the elements of burglary." Petition for Appeal 5, *Midyett v. Commonwealth*, No. 1142-17-2 (Va. Ct. App. filed Aug. 7, 2017.)[3] In rejecting Midyett's sufficiency of the evidence argument, the Court of Appeals of Virginia aptly found:

"When considering on appeal the sufficiency of the evidence presented below, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" *Kelly v. Commonwealth*, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting *Davis v. Commonwealth*, 39 Va. App. 96, 99, 570 S.E.2d 875, 876–77 (2002)). "On appeal, we will consider the evidence in the light most favorable to the Commonwealth, as it prevailed in the trial court." *Whitehurst v. Commonwealth*, 63 Va. App. 132, 133, 754 S.E.2d 910, 910 (2014).

Appellant was convicted of violating Code § 18.2-92 which provides: "If any person break and enter a dwelling house while said dwelling is occupied, either in the day or nighttime, with the intent to commit any misdemeanor except assault and battery or trespass, he shall be guilty of Class 6 felony."

On October 10, 2016, Deputy Singleton went to the victim's residence based on a report of a breaking and entering. Singleton testified he "saw the rear entrance to the residence was kicked in," and "the [door] frame was on the floor." He also stated that three televisions, a ceiling fan, and a BB gun located in the residence "were smashed." Appellant was not present when Singleton was at the residence. Photographs depicting the back door of the residence and the damaged property were admitted into evidence.

The victim testified appellant had previously lived with her at the residence. She estimated he moved out in September of 2016. The victim stated she rents the residence, and her name and her son's name are on the lease. The victim testified she and appellant had argued on the telephone on the evening of October 9, 2016, and appellant indicated he was coming to the victim's residence. The victim told appellant not to come to her home.

The victim testified that when she went to bed at about midnight, the doors and windows to her home were locked. Her sister, her son, and her boyfriend were also in the residence. The victim awoke to her sister screaming, "He just broke into the house. Get out." The victim saw that the light bulbs in her ceiling fan were broken, and the television in her bedroom was broken. The victim testified she "had glass all over" her. The victim went downstairs and saw the other damaged property. The victim stated the door jamb of the kitchen door was on the floor, and

---

[3] Midyett also argued that the Circuit Court erred when it denied Midyett's "Motions to Strike and convicted him of Breaking and Entering with the Intent to Commit Grand Larceny when no Intent was Established." Petition for Appeal 5, *Midyett v. Commonwealth*, No. 1142-17-2 (Va. Ct. App. filed Aug. 7, 2017.) The Court of Appeals of Virginia summarily dismissed this assignment of error because Midyett was not convicted of this crime and any citation to it was corrected by the Circuit Court on remand. *Midyett v. Commonwealth*, No. 1142-17-2, at 4–5 (Va. Ct. App. Feb. 26, 2018.)

the curtains were on the floor. She stated these items were not on the floor when she went to bed.

The victim also stated that prior to the break-in, she had obtained a protective order against appellant, and appellant did not have a key to her house. Evidence indicated that appellant was not served with the protective order until after October 10, 2016. The victim changed the locks on the house after appellant moved and prior to the incident. The victim stated she had contacted her landlord about fixing the rear door in the past, stating that the landlord "was supposed to replace the [caulking] so ants and bugs" could not enter the house. She stated there was no damage to the door previously.

The victim's son, K.E., who was thirteen years old, testified that on the night of the incident, he was watching television in the living room with his godmother, and he heard "loud noises." Appellant entered the room from the direction of the back door. K.E. stated appellant said something similar to, "Call the cops if you want to." K.E. was scared, and he went to the laundry room with his godmother. On cross-examination, K.E. agreed that appellant appeared to be mad on the night of the incident. K.E. also stated that appellant and the victim had previously had an argument, and he was not sure whether appellant still resided in the household.

Appellant testified he was still residing with the victim on October 10, 2016, and he had been living in her residence for four years. Appellant stated he was coming home from an out-of-town trip, and he went to the second floor of the victim's house where he saw the victim in bed with another man. He testified he confronted the victim and "caught a little attitude." Appellant admitted he broke the televisions and BB gun, and he stated he did so because he was angry. He denied that he broke the frame of the back door or that he broke into the house through that door. Appellant stated the back door was installed incorrectly, and the victim had been trying to get the landlord to fix the door. Appellant testified he used his key to open the back door. Appellant produced an identification card and his 2016 W-2 form that showed his address as the address of the victim's house. The expiration of the identification card was prior to October 10, 2016. Appellant had three felony convictions.

"Intent is a state of mind that may be proved by an accused's acts or by his statements and that may be shown by circumstantial evidence." *Wilson v. Commonwealth*, 249 Va. 95, 101, 452 S.E.2d 669, 673–74 (1995) (quoting *Wright v. Commonwealth*, 245 Va. 177, 193, 427 S.E.2d 379, 390 (1993)). "[T]he fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." *Moody v. Commonwealth*, 28 Va. 702, 706–07, 508 S.E.2d 354, 356 (1998). "Intent is a factual determination, and a trial court's decision on the question of intent is accorded great deference on appeal and will not be reversed unless clearly erroneous." *Towler v. Commonwealth*, 59 Va. App. 284, 297, 718 S.E.2d 463, 470 (2011).

The trial court accepted the victim's testimony and did not accept appellant's testimony, finding appellant's testimony did not "make any sense." "[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact." *Parham v. Commonwealth*, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving

testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702, 714 S.E.2d 212, 222 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509–10, 500 S.E.2d 233, 235 (1998)).

The trial court specifically found that appellant was not living at the victim's residence at the time of the incident. The trial court further found that the victim had changed the lock on the back door, and she told appellant not to come to her residence on the night of the incident. However, as the trial court stated, appellant "show[ed] up at the house and there's destruction to the door frame." In addition, the victim's son heard a "loud noise" just before he saw appellant inside the residence. The victim testified she and appellant had argued on the telephone earlier that evening. Appellant admitted he was mad, and he admitted he damaged property inside the residence. From the evidence earlier presented, the trial court could infer that appellant broke into and entered the victim's occupied property with the intent to damage property. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that appellant violated Code § 18.2–92.

*Midyett v. Commonwealth*, No. 1142-17-2, at 1–4 (Va. Ct. App. Feb. 26, 2018) (alterations in original).[4]

Upon review of the Court of Appeals of Virginia's decision and the record in this case, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). Despite Midyett's argument to the contrary, the evidence was sufficient for any rational factfinder to have found Midyett guilty of burglary.

It is undisputed that Midyett entered the residence and damaged property. Midyett's arguments for why he did not break and enter are twofold. First, Midyett argues that "complainant never offered evidence that the complainant owned or leased" the residence. (ECF No. 2, at 1.) The victim was not required to offer evidence that she owned or leased the residence to establish that Midyett was guilty of breaking and entering. Rather, the statute simply requires the breaking and entering of "a dwelling house while said dwelling is occupied." Va. Code Ann. § 18.2–92

---

[4] This Court, reviewing the sufficiency of the evidence on federal habeas, is bound by the trial court's factual findings because Midyett has not presented clear and convincing evidence to rebut the Circuit Court's findings. *See Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008).

(West 2020). Even so, despite Midyett's contention to the contrary, the victim testified during trial that her name and her son's name were listed on the lease.

Second, Midyett argues that he could not be guilty of breaking and entering because he lived at the residence on the date of the incident. (ECF No. 2, at 1.) To demonstrate that he lived at the residence on the night of the incident, Midyett again offers a temporary driving permit that identified his address as the victim's address. (ECF No. 2–1, at 1.) However, this temporary permit expired on June 19, 2014, more than two years before the incident.[5] Midyett also argues that the victim's son "testified that petitioner lived [at the residence] on the night of the alleged breaking and entering." (ECF No. 2, at 1.)

On cross-examination, defense counsel asked the victim's son the following:

Q. All right. And had he still been coming to your house?

A. Yeah.

Q. He lived with y'all?

A. Yeah.

(Apr. 12, 2017 Tr. 47.) On redirect, the Commonwealth inquired:

Q. [K.E.], was he living with you on the date that he came in the living room frustrated?

A. I believe so. Well, him and my mom, they had an argument. So I don't know how that --

Q. You don't know how that was going?

---

[5] The Court notes that the temporary driving permit also includes an expiration date of September 15, 2021. (ECF No. 2–1, at 1.) The Court believes that this date is for the real driver's license that the temporary driving permit notes will be forthcoming. Moreover, the temporary driver's permit was issued on May 20, 2014 and truly only reflects that Midyett resided at the victim's apartment as of that date. (*See id.*) As the Circuit Court found, this document fails to demonstrate that Midyett lived at the apartment on the date of the incident.

A. No.

Q. I'm sorry?

A. I was told to stay in a child's place.

(Apr. 12, 2017 Tr. 47.) Although the victim's son initially indicated that Midyett lived with them,

he failed to definitively testify that Midyett resided with the victim and himself on the date of the

incident. The victim, however, testified that Midyett had not lived at the house since mid to late

September and at that time she told him not to come back. (Apr. 12, 2017 Tr. 21–22.) The victim

also testified that she had filed for a protective order against Midyett prior to the incident (Apr. 12,

2017 Tr. 31–32), that Midyett did not have a key,[6] that the two had argued that night on the

telephone, and that she told Midyett not to come to the house that night (Apr. 12, 2017 Tr. 22–23)

and he did anyhow. Based on the victim's testimony, the Circuit Court reasonably found that

Midyett no longer lived at the residence.

As aptly summarized by the Court of Appeals of Virginia, the evidence presented at trial

was sufficient for any rational factfinder to convict Midyett of burglary under Virginia Code

§ 18.2–92. Therefore, upon review of the record in this case, the Court concludes that the Court

of Appeals of Virginia's decision was not an unreasonable determination of the facts in light of

the evidence presented at trial. *See* 28 U.S.C § 2254(d). For these reasons, Claim One lacks merit

and will be DISMISSED.

---

[6] The Circuit Court noted that the victim had testified that she had changed the locks. (Apr. 12, 2017 Tr. 49.) From this Court's review of the trial testimony it appears that the victim testified that Midyett did not have a key to the house and did not definitively answer the question about whether she had changed the locks. (*See* Apr. 12, 2017 Tr. 33, 36.)

# IV. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 12) will be GRANTED. Midyett's claim will be DISMISSED, and his § 2254 Petition (ECF No. 1) will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.[7]

An appropriate Final Order shall issue.

/s/ _____
Roderick C. Young
United States Magistrate Judge

Date: February 20, 2020
Richmond, Virginia

---

[7] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Midyett fails to meet this standard.